| **Fill in this information to identify the case:** | |
|---|---|
| Debtor 1 | Nadia LaTorcha Pope |
| Debtor 2 | |
| United States Bankruptcy Court for the: Western District of Washington | |
| Case number : | 16-44540-MJH |

Official Form 410S1

# Notice of Mortgage Payment Change 12/15

If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment is due. See Bankruptcy Rule 3002.1.

| | | | |
|---|---|---|---|
| **Name of creditor:** | Citibank, N.A., as trustee for CMLTI Asset Trust | **Court claim no.** (if known): | **10** |
| **Last 4 digits** of any number you use to identify the debtor's account: | **9881** | **Date of payment change:** Must be at least 21 days after date of this notice | **05/1/2021** |
| *To the extent any prior interest rate adjustments under the terms of the loan documents or prior escrow adjustments were not noticed in this Court pursuant to Bankruptcy Rule 3002.1, after December 1, 2011 or the Petition Date (whichever is later), Creditor is giving the Debtor the benefit of any lower payment amount as provided under the loan documents, escrow analysis, or a notice previously filed with this Court pursuant to Bankruptcy Rule 3002.1. This does not constitute a modification of the payment obligations under the terms of the promissory note, mortgage, or other loan documents.* | | **New total payment:** Principal, interest, and escrow, if any | **$1,774.98** |

### Part 1: Escrow Account Payment Adjustment

1. **Will there be a change in the debtor's escrow account payment?**

    [ ] No

    [X] Yes. Attach a copy of the escrow account statement prepared in a form consistent with the applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why:

    **Current escrow payment: $578.09**        **New escrow payment: $582.83**

### Part : 2  Mortgage Payment Adjustment

2. **Will the debtor's principal and interest payment change based on an adjustment to the interest rate on the debtor's variable-rate account?**

    [ ] No

    [X] Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why:

    **Current interest rate:**   3.880          **New interest rate:**  5.380
    **Current Principal and interest payment: $998.96**    **New principal and interest payment: $1,192.15**

### Part 3: Other Payment Change

3. **Will there be a change in the debtor's mortgage payment for a reason not listed above?**

    [X] No

    [ ] Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement. (Court approval may be required before the payment change can take effect).

    Reason for change:

    **Current mortgage payment:**            **New mortgage payment:**

Official Form 410S1           Notice of Mortgage Payment Change           page 1

Debtor 1 <u>Nadia LaTorcha Pope</u>    Case number (if known)  <u>16-44540-MJH</u>
         First Name  Middle Name  Last Name

## Part 4: Sign Below

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box:*

[ ]  I am the creditor.

[X]  I am the creditor's attorney or authorized agent.

**I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.**

<u>/S/Lynn Pluister</u>                                Date  <u>4-8-2021</u>
Signature

Print:         <u>Lynn Pluister</u>              Title  <u>Authorized Agent for Creditor</u>

Company        <u>Padgett Law Group</u>

Address        <u>6267 Old Water Oak Road, Suite 203</u>

               <u>Tallahassee FL, 32312</u>

Contact phone  <u>(850) 422-2520</u>        Email   <u>PLGinquiries@padgettlawgroup.com</u>

Official Form 410S1            **Notice of Mortgage Payment Change**            page 2

Case 16-44540-MJH    Doc    Filed 04/08/21    Ent. 04/08/21 14:20:19    Pg. 2 of 11

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to the parties on the attached Service List by electronic service and/or by First Class U.S. Mail on this the ___8___ day of April, 2021.

/S/ Lynn Pluister

LYNN PLUISTER
PADGETT LAW GROUP
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
PLGinquiries@padgettlawgroup.com
*Authorized Agent for Creditor*

# SERVICE LIST (CASE NO. 16-44540-MJH)

Nadia LaTorcha Pope
8902 45th St W
University Place, WA 98466-7526

represented by Timothy J Wilson
Law Offices of Timothy J. Wilson
1113 A Street
Suite 203
Tacoma, WA 98402

Trustee
Michael G. Malaier
2122 Commerce Street
Tacoma, WA 98402

US Trustee
United States Trustee
700 Stewart St Ste 5103
Seattle, WA 98101

**FAY SERVICING**

PO Box 619063
Dallas, TX  75261-9063

BARBARA J POPE
NADIA L POPE
8902 45TH ST W
TACOMA WA  98466-7526

## ESCROW ACCOUNT DISCLOSURE STATEMENT

| | |
|---|---|
| Loan Number: | ▮▮▮▮▮ |
| Analysis Date: | 01/25/2021 |

**Customer Service**  1-800-495-7166

| | |
|---|---|
| Monday-Thursday | 8:00 a.m. to 9:00 p.m. CT |
| Friday | 8:30 a.m. to 5:00 p.m. CT |
| Saturday | 10:00 a.m. to 4:00 p.m. CT |

| | PRESENT PAYMENT | NEW PAYMENT effective 05/01/2021 |
|---|---|---|
| Principal & Interest | $1,192.15 | $1,192.15 |
| Escrow Payment | $578.09 | $582.83 |
| Escrow Shortage | $0.00 | $0.00 |
| Optional Insurance | $0.00 | $0.00 |
| Other | $0.00 | $0.00 |
| **Total** | **$1,770.24** | **$1,774.98** |

### ESCROW ANALYSIS STATEMENT

At least once every 12 months Fay Servicing, LLC analyzes your escrow account, in accordance with federal regulations, to ensure we collect sufficient funds to pay escrow items when they are due. The escrow account analysis below is an estimate of the activity that will occur in your escrow account over the next 12 months. The analysis will show if you currently have a shortage or overage in your account. This amount will be accounted for in your new monthly escrow payment unless there is an overage amount over $50. In this case, the full amount of the overage will be refunded to you.

#### UNDERSTANDING YOUR MONTHLY ESCROW PAYMENT AMOUNT

**1. Projected Monthly Escrow Payment**

The section titled "Projected Escrow Activity for the Next 12 Months" is a schedule that represents all anticipated payments to and from escrow for the coming year. First, we take the total of all Projected Payments from Escrow (a) and divide it equally over 12 months to determine your Projected Monthly Escrow Payment: $6,994.00 / 12 months = $582.83.

**2. Escrow Surplus/Shortage**

The minimum escrow balance required in your account is known as the Required Low Point. This is noted as (b) under "Projected Escrow Activity for the Next 12 Months". The Required Low Point is set in accordance with your mortgage contract, state law or federal law. Mortgage Insurance, if any, is not included in the Required Low Point calculation. Next, we compare the Projected Low Point (c) to the Required Low Point (b) to determine the overage/surplus:
You have a surplus of $9,208.17 because the Projected Low Point (c) of $6,106.45 plus the escrow adjustment* is more than the Required Low Point of $1,165.66.
*An Escrow Adjustment of $4,267.38, scheduled to be repaid through the bankruptcy, is included in this calculation.
If the surplus is less than $50.00, it will be spread to the low point "the minimum escrow balance required", which could be spread equally up to 12 months and automatically reduce your monthly payment accordingly. Otherwise, if your loan is contractually current, we will send you a check for the surplus amount.

**3. New Monthly Escrow Payment**

| | |
|---|---|
| Principal & Interest | $1,192.15 |
| Escrow Payment | $582.83 |
| Escrow Shortage | $0.00 |
| Optional Insurance | $0.00 |
| Other | $0.00 |
| **Total** | **$1,774.98** |
| Effective Date | 05/01/2021 |

#### PROJECTED ESCROW ACTIVITY FOR THE NEXT 12 MONTHS

| MONTH | PAYMENTS TO ESCROW | PAYMENTS FROM ESCROW | DESCRIPTION | PROJECTED BALANCE | REQUIRED BALANCE |
|---|---|---|---|---|---|
| | | | STARTING BALANCE | 6,106.49 | 1,165.70 |
| May-21 | 582.83 | .00 | | 6,689.32 | 1,748.53 |
| Jun-21 | 582.83 | .00 | | 7,272.15 | 2,331.36 |
| Jul-21 | 582.83 | .00 | | 7,854.98 | 2,914.19 |
| Aug-21 | 582.83 | .00 | | 8,437.81 | 3,497.02 |
| Sep-21 | 582.83 | .00 | | 9,020.64 | 4,079.85 |
| Oct-21 | 582.83 | 2,626.58 | COUNTY 2ND | 6,976.89 | 2,036.10 |
| Nov-21 | 582.83 | .00 | | 7,559.72 | 2,618.93 |
| Dec-21 | 582.83 | .00 | | 8,142.55 | 3,201.76 |
| Jan-22 | 582.83 | .00 | | 8,725.38 | 3,784.59 |
| Feb-22 | 582.83 | .00 | | 9,308.21 | 4,367.42 |
| Mar-22 | 582.83 | 1,740.84 | HOMEOWNERS I | 8,150.20 | 3,209.41 |
| Apr-22 | 582.83 | 2,626.58 | COUNTY 1ST | (c) 6,106.45 | (b) 1,165.66 |
| **TOTAL** | **$6,993.96** | **(a) $6,994.00** | | | |

#### IMPORTANT MESSAGES

ACH Debit Borrowers:  You have previously authorized Fay Servicing, LLC, to automatically debit your bank account each month for the amount of your monthly payment of principal, interest, and escrow (if applicable).  Please note the amount of your next ACH debit will be changed (increase/decrease) to reflect the amount of your new monthly payment as reflected herein.  Fay Servicing, LLC, is authorized to debit your bank account each month until you provide written or oral notice to stop.  Termination request must be received by Fay Servicing, LLC, at least three (3) business days prior to your next scheduled debit.

Fay Servicing, LLC is a debt collector, and information you provide to us will be used for that purpose.  To the extent your original obligation was discharged, or is subject to an automatic stay under the United States Bankruptcy Code, this is being provided for informational purposes only and does not constitute an attempt to collect a debt or impose personal liability.  Our office hours are Monday-Thursday 8 A.M. - 9 P.M.  Friday 8:30 A.M. - 5 P.M., and Saturday 10 A.M. - 4 P.M. CST.  Call today: 1-800-495-7166.  NMLS ▮▮▮▮▮.  NC residents: Fay Servicing, LLC, NC Permit Number ▮▮▮▮, 425 S. Financial Pl., Suite 2000, Chicago, IL 60605-6011.

Check will be sent separately.

# ESCROW ACCOUNT DISCLOSURE STATEMENT

**Loan** ████████████  **ACCOUNT HISTORY**  **Date: 01/25/2021**

This is a statement of actual activity in your escrow account from 03/01/2021 through 04/30/2021. This section provides last year's projections and compares it with actual activity.
An asterisk (*) indicates a difference from a previous estimate either in the date or amount and may be caused by any of the following:

- The actual amount of insurance or taxes paid since your last Escrow Analysis Statement was higher or lower than anticipated
- Additional funds were applied to your escrow account
- The time elapsed between payments to escrow and disbursement from escrow was shorter or longer than anticipated on your last Escrow Analysis Statement.

| MONTH | PAYMENTS PROJECTED | PAYMENTS ACTUAL | | DISBURSEMENTS PROJECTED | DISBURSEMENTS ACTUAL | | DESCRIPTION | ESCROW BALANCE PROJECTED | ESCROW BALANCE ACTUAL |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | BEGINNING BALANCE | 4,310.44 | 9,317.75 |
| 03/21 | 578.08 | 578.08 * | E | 1,683.86 | 1,740.84 | E | HOMEOWNERS I | 3,204.66 | 8,154.99 |
| 04/21 | 578.08 | 578.08 | E | 2,626.58 | 2,626.58 | E | COUNTY 1ST | 1,156.16 < | 6,106.49 < |
| TOTAL | $6,936.96 | $1,156.16 | | $6,937.02 | $4,367.42 | | | | |

After Recording Return to

Bayview Loan Servicing, LLC
Attn Collateral Department
4425 Ponce de Leon Blvd, 5th Floor
Coral Gables, FL 33146



_____ Space Above This Line For Recording Data _____

# LOAN ADJUSTMENT AGREEMENT

This loan adjustment agreement is made and entered into as of December 26, 2013 (the Effective Date), by and between, Bayview Loan Servicing, LLC, ("Servicer") and BARBARA J POPE and NADIA L POPE ("Borrower")

## RECITALS

A Servicer is the holder or servicing agent of the holder of that certain Promissory Note ("Note") dated 09/14/2006, executed by Borrower or Borrower's predecessor-in-interest in the original principal sum of $289,000 00

B The note evidences a loan ("Loan") to Borrower or Borrower's predecessor-in-interest on 09/14/2006, in the original principal sum of $289,000 00 along with a Deed of Trust or Mortgage ("Security Instrument") securing said Note The Security Instrument creates a secured lien on certain real property ("Property") owned by Borrower (and is more specifically described in the Security Instrument) The Note and Security Instrument and all other loan documents related to the Loan are hereinafter collectively referred to as the "Loan Documents"

C Due to adverse economic circumstances, Borrower has requested Servicer to adjust the scheduled amortization of the Note to permit Borrower to meet Borrower's obligations to Servicer in full and in a timely manner The requested adjustment will benefit Borrower, Servicer and any junior lien holder, by avoiding the possible foreclosure of the Loan by Servicer Accordingly, it is considered to be in the best interest of all concerned to enter this Loan Adjustment Agreement ("Agreement")

D Borrower hereby agrees that this Agreement may only become effective upon Borrower's completion of the Stipulation Agreement dated December 26, 2013 If Borrower successfully completes all the terms of said Stipulation, Servicer will execute this Agreement and adjust the Loan accordingly However, said execution is subject to Borrower's addressing and clearing of any and all title issues to Servicer's satisfaction All payments made pursuant to the Stipulation Agreement (with the exception of the down payment mentioned below) will be credited to payments due under this Agreement

E Both Borrower and Servicer hereby agree that Servicer may, in its sole discretion, record this Agreement

## AGREEMENT

NOW, THEREFORE, Borrower and Servicer hereby agree as follows

**1 NOTE MODIFICATIONS**
  (a) **Outstanding Debt**
  Borrower agrees that the unpaid principal balance due on the Note of $225,646 19 (including credit for Stipulation Agreement downpayment), shall be decreased by $0 16 the amount of the unpaid installments, interest, late charges, fees and costs, and, if applicable, any advances for unpaid property taxes and/or insurance premiums ("Unpaid Sums Due"), for a total unpaid principal balance due of $225,646 03 ("New Balance") Borrower agrees to the accuracy of the allegations contained in the above Recitals as well as to the authenticity and validity of each document referred to herein and to the validity of the unpaid sums due and the New Balance Borrower agrees to pay the Unpaid Sums Due to Servicer and that he/she has no defenses, claims, or offsets with respect thereto Interest and payments will accrue on the New Balance at the interest rates, whether adjustable, variable or fixed, provided in the Note, unless modified by this Agreement

  (b) **New Monthly Payments, Payment Adjustments**

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-3 | 3 880% | 01/01/2014 | $998 96 | $492 53 | $1,491 49 | 02/01/2014 | 36 |
| 4 | 4 880% | 01/01/2017 | $1,126 92 | Adjust Annually | Adjust Annually | 02/01/2017 | 12 |
| 5-34 | 5 380% | 01/01/2018 | $1,192 15 | Adjust Annually | Adjust Annually | 02/01/2018 | 358 |

Effective on 01/01/2018, Borrower's rate of interest will be 5 38% and will remain fixed for the remaining life of the loan

(c) **New Maturity Date**
The maturity date will be 11/01/2047, on which date any unpaid interest and all other sums due shall be paid in full

2 **ESTABLISHMENT OF IMPOUND/ESCROW ACCOUNT**
Borrower acknowledges that Servicer will establish an impound/escrow account for the collection of property taxes and insurance premiums if such account is not currently in existence Servicer will analyze the impound/escrow account from time to time As a result of this analysis, the escrow portion of Borrower's monthly payment may change Borrower further acknowledges that the escrow portion of his/her monthly payment may be substantially higher than the estimate (Note In certain states, impound/escrow accounts do not collect for payment of taxes pertaining to Bond/Special Assessments and Irrigation/Water District)

3 **RELEASE**
Borrower releases Servicer, its subsidiaries, affiliates, agents, officers and employees, from any and all claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way connected with the Loan, the servicing of the Loan, or events which lead up to or resulted in Borrower entering into this Agreement Borrower waives any rights which Borrower may have under federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution, including without limitation, California Civil Code § 1542, which provides as follows A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR

4 **AGREEMENT NOT TO ENCUMBER**
Borrower agrees that it will not voluntarily or involuntarily (i) grant any interest in or option with respect to, any of the Property, or (ii) create or permit to exist any lien, security interest, or other charge or encumbrance upon or with respect to any of the Property, except for Servicer's already existing security interest and lien, or sell the Property for the benefit of itself or any party or in any manner other than that contemplated by this Agreement

5 **ASSIGNMENT OF LEASES AND RENTS AND RECEIVERSHIP**
The existing Mortgage and Note shall be amended to include the following In the event the loan is in default and Borrowers are generating any gross income from the property by virtue of a tenancy or any other arrangement, Borrowers agree to irrevocably assign and transfer to Servicer the right title and interest of Borrower in all existing and future leases and agreements whether or not in writing, and any rents and deposits derived and collected therefrom, affecting and pertaining to the use enjoyment or occupancy of any part of the premises Borrower consents to the entry by Servicer, Servicer s agent, or court appointed receiver or designee, to enter the premises to collect the rents and enforce the leases Borrower further consents and waives opposition to the appointment of a court appointed Receiver in the event the loan is in default

6 **CHANGE IN FINANCIAL STATUS**
In the event Borrower or any successor or assignee, shall (i) file with any bankruptcy court of competent jurisdiction or made the subject of any petition under Title 11 of the United States Code, as amended ("Bankruptcy Code"), (ii) be the subject of any order for relief issued under the Bankruptcy Code, (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, (iv) have sought, or consented to, or acquiesced in, the appointment of by any court of competent jurisdiction approving a petition filed against such party for any reorganization, any trustee, receiver, conservator, or liquidator, or, (v) be the subject of any order, judgment or decree entered arrangement composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, then, subject to court approval, Servicer shall thereupon be entitled and Borrower irrevocably consents to relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or otherwise, on or against the exercise of the rights and remedies otherwise available to Servicer, including, but not limited to, immediate termination of this Agreement and filing and/ or proceeding with the foreclosure and damage action, and any other remedy as otherwise provided at law in equity, and Borrower hereby irrevocably agrees that he/she shall not object to and hereby irrevocably waives his/her rights to object to Servicer's requests for such relief This provision is a material inducement for Servicer to enter into this Agreement

7 **NO OTHER CHANGES**

Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations, and conditions in the Note and the Security Instrument remain unmodified and in full force and effect The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the Note, as modified by this Agreement None of Borrower's obligations or liabilities under the Security Instrument shall be diminished or released by any provisions herein Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument whether such rights or remedies arise herein or by operation of law Any inserted terms, changes or additions to this Agreement will immediately render it null and void Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing the below Borrower has voluntarily signed this Agreement

**8  NO RELIANCE, CONSTRUCTION**
Each of the parties hereto hereby declares that, prior to the execution of this Agreement, they have apprized themselves of sufficient relevant data in order that they might intelligently exercise their own judgments in deciding on the contents of this Agreement and whether to execute this Agreement Borrower declares that his/her decision to execute this Agreement is not as a result of undue influence or duress, and not predicated on or influenced by any declarations or representations not set forth in this Agreement, by Servicer, or any other person or party or any predecessors in interest, its successors, assigns, officers, directors, employees, agents or attorneys Each of the parties hereto hereby further acknowledges and agrees that each of them has had significant input in the development of this Agreement and this Agreement shall not therefore be construed

**9  NO ORAL MODIFICATION**
This Agreement may not be amended or modified in any way except by a written instrument executed by all of the parties hereto

**10  SUCCESSORS AND ASSIGNS**
This Agreement shall be binding upon and inure to the benefit of the signatories to this Agreement and each of their respective successors and assigns The obligations of the signatories to this Agreement shall not be delegated or assigned

**11  ATTORNEY'S FEES, JURY TRIAL WAIVER**
In the event that any party hereto brings suit for the collection of any damages resulting from, or the injunction of any action constituting, a breach of any terms or provisions of this Agreement, then the prevailing party shall be entitled to recover all reasonable court costs and attorney's fees, at all levels

**12  ADDITIONAL AGREEMENTS**
I agree to the following

(a) In the event Borrower defaults under this Agreement, without waiving any rights and remedies otherwise available to Servicer, Servicer shall thereupon be entitled to require and Borrower irrevocably consents to enter into either Servicer s Deed-In-Lieu or Short Sale program with respect to the Property Under the Deed-In-Lieu program you will voluntarily transfer ownership of the Property to Servicer or Servicer s designee to satisfy the amounts due on the Loan The Short Sale program is specifically designed to assist with the sale of the Property to avoid foreclosure, even if the sale price may not pay off the amount owed on the Loan

(b) Borrower will execute such other documents as may be necessary to consummate the terms and conditions of such Deed-In-Lieu or Short Sale program and will cooperate fully with Servicer in obtaining any title endorsement(s), or similar title insurance product(s), and/or affidavit(s) that are necessary or required by the Servicer s procedures in connection with such program(s)

**13  PARTIAL INVALIDITY**
If any term, covenant or condition of this Agreement or its application to any person or circumstances shall be held to be illegal, invalid or unenforceable, the remainder of this Agreement or the application of such term or provisions to other persons or circumstances shall not be affected, and each term hereof shall be legal valid and enforceable to the fullest extent permitted by law, unless an essential purpose of this Agreement would be defeated by the loss of the illegal, unenforceable, or invalid provision In the event of such partial invalidity, the parties shall seek in good faith to agree on replacing any such legally invalid provisions with valid provisions which, in effect, will, from an economic viewpoint, most nearly and fairly approach the effect of the invalid provision and the intent of the parties in entering into this Agreement

**BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES HIS/HER RIGHT TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE LOAN DOCUMENTS, ANY OTHER DOCUMENTS EXECUTED OR DELIVERED IN CONNECTION HEREWITH, AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED OR DELIVERED IN CONJUNCTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY THIS PROVISION IS A MATERIAL INDUCEMENT FOR SERVICER ENTERING INTO THIS AGREEMENT**

IN WITNESS WHEREOF, Servicer and Borrower have executed this Loan Adjustment Agreement,

**Borrower**

By _(signature)_ Date 12-28-13
BARBARA J POPE

By _(signature)_ Date 12-28-13
NADIA L POPE

Servicer:

By _(signature)_ Date 4/3/14
Vice President, Bayview Loan Servicing, LLC

A.

Licensed Loan Originator: Louis Ferrante
MLO License Number: ▮▮▮▮▮▮▮▮

# NOTARY ACKNOWLEDGEMENT

STATE OF ~~Pierce~~ Washington )
                                      ) SS
COUNTY OF Pierce )

On 12/28/13, before me, Anna Sonney a notary public for and within the said county, personally appeared, Nadia L. Pope and Barbara J Pope, as the Borrower(s), personally known to me *(or proved to me on the basis of satisfactory evidence)* to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) on the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal

**Notary Public**
**State of Washington**
**ANNA SONNEY**
**My Appointment Expires Oct 11, 2016**

By Anna Sonney
Notary Public Tacoma WA
My Commission Expires Oct 11, 2016

AM013 Loa[REDACTED]